IN THE MATTER OF THE SUSPENSION OR REVOCATION
OF THE CERTIFICATE OF FRED F. HELLER, R. P. TO
PRACTICE PHARMACY IN THE STATE OF NEW JER-
SEY; AND OF THE PERMIT OF CARFRED, INC.; T/A
HELLER PHARMACY TO CONDUCT A PHARMACY IN
THE STATE OF NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1975—Decided December 22, 1975.

Before Judges HALPERN, CRANE and MICHELS.

*Mr. Stephen N. Dratch* argued the cause for appellants (*Messrs. Greenberg and Margolis,* attorneys).

*Mr. John Paul Dizzia,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

PER CURIAM. The New Jersey State Board of Pharmacy (Board) filed a detailed five-count complaint against appellant Fred F. Heller, a licensed and registered pharmacist of this State, and Carfred, Inc., t/a Heller Pharmacy, which possessed a permit to operate a pharmacy. The thrust of the complaint was that appellants were guilty of grossly unprofessional conduct, in violation of *N. J. S. A.* 45:14–12. Following a hearing before the Board, at which appellant did not testify, the Board revoked Heller's license to practice pharmacy and Carfred, Inc.'s permit to operate a pharmacy. In addition, a civil penalty of $50,427 was imposed against appellants.

In seeking to reverse the Board's determinations, appellants raise the following four points in their brief:

*Point I*: The Board of Pharmacy's imposition of a civil penalty of $50,427.00 was manifestly arbitrary and capricious and a denial of due process of law.

*Point II*: There is no authority to justify the finding of unprofessional conduct by the Board.

*Point III*: Appellant, Fred Heller, did not violate any known or existing statutes or regulations concerning the dispensation of cough preparations.

*Point IV*: Appellant was denied a fair hearing due to the use of non-expert testimony to establish a standard of professional conduct.

The scope of our judicial review involving an appeal from the Board's determination is the same as that used for other administrative agencies. Thus, where an administrative agency has acted within its authority its actions will not be reversed, absent an affirmative showing that its judgment was arbitrary, capricious or unreasonable. *Supermarkets General Corp. v. Sills*, 93 *N. J. Super.* 326, 350 (Ch. Div. 1966); *East Paterson v. Civil Service*, 47 *N. J. Super.* 55, 65 (App. Div. 1957). Our goal is to determine whether the Board's findings are supported by substantial credible evidence. *Maple Hill Farms, Inc. v. Div. of N. J. Real Estate Commission*, 67 *N. J. Super.* 223, 226–227 (App. Div. 1961).

Appellants' contentions are interlaced with the argument that they violated no known statute or Board regulation with respect to how and to whom they sold cough syrups containing codeine, classified as a schedule V controlled dangerous substance. They assert that even though they sold about 18,600 bottles of such preparations within a period of about 17½ months, they were not guilty of grossly unprofessional conduct. They take too narrow a view on this issue.

In determining standards fixed by statute or regulation we are not confined to specific terms; rather, we look at the statutory policy sought to be achieved by examining the

entire statutory enactment and decide whether the standards may be reasonably implied therefrom. See *Securities Exchange Comm'n v. Chenery Corp.*, 332 *U. S.* 194, 202, 67 *S. Ct.* 1575, 91 *L. Ed.* 1995 (1947); *R. H. Macy & Co. v. Div. of Taxation*, 77 *N. J. Super.* 155 (App. Div. 1962); *Milchell v. Cavicchia*, 29 *N. J. Super.* 11 (App. Div. 1953). This is particularly true of the pharmacy profession in whom the Legislature reposed great confidence and reliance to protect the public's health. *Supermarkets General Corp., supra* 93 *N. J. Super.* at 338. That which is implied is as much a part of the law as that which is expressed. As indicated by Justice Jacobs in *Ward v. Scott*, 11 *N. J.* 117, 123–124 (1952), "But the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power." See also, *Goodley v. N. J. Real Estate Comm.*, 29 *N. J. Super.* 178 (App. Div. 1954); *Berardi v. Rutter*, 42 *N. J. Super.* 39 (App. Div. 1956); *Banking Comm'r v. Parkwood Co.*, 98 *N. J. Super.* 263, 273 (App. Div. 1967); *Humane Soc. of U. S., N. J. Branch, Inc. v. N. J. State Fish and Game Council*, 129 *N. J. Super.* 239 (Ch. 1974); *Cherry Hill Tp. v. N. J. Racing Comm'n*, 131 *N. J. Super.* 125 (Law Div. 1974) aff'd 131 *N. J. Super.* 482 (App. Div. 1975). Justice Mountain enunciated the same principle in *N. J. Builders, Owners and Managers Assn. v. Blair*, 60 *N. J.* 330, 338 (1972), thusly: "Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law."

In short, where the Legislature has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy, the relation of the remedy to the policy is peculiarly a matter for administrative competence. *American Power Co. v. S. E. C.*, 329 *U. S.* 90, 112, 67 *S. Ct.* 133, 91 *L. Ed.* 103 (1946). Therefore, we should not overturn the Board's determination un-

less we find it unwarranted in law or without justification in fact.

In light of the foregoing principles we have carefully reviewed this voluminous record and are completely satisfied that appellants were guilty of grossly unprofessional conduct, in violation of the statutes and regulations here involved, and that the revocation of appellants' license and permit, and imposition of the monetary civil penalty, were authorized, warranted and not premature as suggested in the dissent. See *Knoble v. Waterfront Comm'n of N. Y. Harbor*, 67 *N. J.* 427 (1975); *Jackson v. Concord Co.*, 54 *N. J.* 113, 125–129 (1969); *Rex Trailer Co. v. United States*, 350 *U. S.* 148, 76 *S. Ct.* 219, 100 *L. Ed.* 149 (1955); 1 *Davis, Administrative Law Treatise*, § 2.13 at 133–138 (1958). Giving due regard to the Board's expertise in the problems confronting pharmacists and their opportunity to see and hear the witnesses and to judge their credibility, there is ample credible evidence in this record as a whole to support the Board's determination. *Knoble v. Waterfront Comm'n of N. Y. Harbor, supra; Close v. Kordulak Bros.*, 44 *N. J.* 589, 599 (1965).

Nor is there substance to appellants' argument that they were "denied a fair hearing due to the use of non-expert testimony to establish a standard of professional conduct." First, the Board is comprised in part of five licensed pharmacists of long standing in their profession. Secondly, the qualifications of an expert are left to the sound discretion of the court, here the Board, and will not be disturbed unless there has been a clear abuse of discretion. *Rose v. Port of New York Auth.*, 61 *N. J.* 129, 139 (1972). No such showing has been made here. The three experts who testified were all licensed pharmacists of this State, and represented a cross-section of the profession and its standards as practiced throughout the State.

We have refrained from reciting the detailed factual findings and reasons expressed by the Board for its decision, with which we agree, because they are fully set out in its

comprehensive opinion. As herein supplemented, we affirm on the Board's opinion below.

CRANE, J. A. D. (dissenting in part and concurring in part). The majority opinion approves the imposition of a civil penalty by the Board of Pharmacy in the amount of $50,427. This was done without any notice to the licensee that a monetary penalty was contemplated. The complaint alleging unprofessional conduct sought no such relief nor was any mention of any intention to assess a penalty made during the proceedings before the Board. Under these circumstances the licensee could not reasonably have been expected to have anticipated the imposition of a monetary penalty. He was thus deprived of an opportunity to present evidence in mitigation or bearing on his ability to pay.

The statute, *N. J. S. A.* 45:14–37, declares that any person violating the statute (with exceptions not here pertinent) is subject to a penalty of $25 to $50 for the first offense, $50 to $100 for a second offense, and not less than $100 for each subsequent offense. No attempt was made by the Board to follow the statutory schedule. Instead, the Board assessed a penalty in the gross sum of $50,427 which it estimated as "the minimum amount of unjust profit acquired by Mr. Heller through his unprofessional practices and pricing." The assessment of such a penalty in gross is improper. See *Kingsley v. Wes Outdoor Advertising Co.,* 55 *N. J.* 336, 340 (1970).

The Board is given the power to enforce the provisions of the statutes regulating the practice of pharmacy. *N. J. S. A.* 45:14–37. The statute does not, however, grant the Board the power to assess the amount of the penalty. The means afforded by the statute, *N. J. S. A.* 45:14–38(a), to the Board to enforce and collect a penalty is through the medium of a summary proceeding pursuant to the Penalty Enforcement Law, *N. J. S. A.* 2A:58–1 *et seq.* Ordinarily the amount of a penalty to be imposed for the violation of a regulatory statute is a judicial function to be exercised in the discretion

of the court. *Health Dep't v. Concrete Specialties, Inc.*, 112 *N. J. Super.* 407, 411 (App. Div. 1970). In the absence of specific legislative authorization, an administrative agency has no inherent authority to impose a fine, *Sherry v. Schomp*, 31 *N. J. Super.* 267, 269 (App. Div. 1954), or a monetary penalty, *O'Dowds Dairy v. Hoffman*, 52 *N. J. Super.* 135 (App. Div. 1958). *Cf. N. J. S. A.* 56:8–3.1. The statement in *Supermarkets Gen'l Corp. v. Sills*, 93 *N. J. Super.* 326, 347 (Ch. Div. 1966), to the effect that the Board of Pharmacy is empowered to "assess" penalties was not necessary to the decision in that case and certainly was not intended to convey the impression that the Board had the power to determine the amount of the penalty in the first instance.

Even if the determination of the Board to assess a civil penalty in the amount of $50,472 be regarded as an expression of its evaluation of the magnitude of the penalty which should be sought, another step, in the form of a court proceeding, was required before the issue could be finally resolved. In that sense the "assessment" of the penalty was not a final determination reviewable as of right in this court pursuant to *R.* 2:2–3(a). In any event, no proceedings have been undertaken to enforce and collect a penalty under the Penalty Enforcement Law, *N. J. S. A.* 2A:58–1 *et seq.* The issue of the propriety of the penalty is premature and is not presently justiciable. I would not pass upon it and respectfully express my dissent from that portion of the majority opinion which approves the penalty; in all other respects, I concur.